IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WRR INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| PROLOGIS, a Maryland Real Estate | § | |
| Investment Trust Company, | § | |
| HORSCHEL BROTHERS PRECISION, LLC, | § | Civil Action No. 3:04-CV-2544-L |
| A New York Limited Liability Company, | § | |
| HBP-AERODYNE, LLC, | § | |
| A New York Limited Liability Company, | § | |
| and AERODYNE CORPORATION, | § | |
| A New York Corporation, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Horschel Brothers Precision, LLC's Motion to Dismiss and

Brief in Support, filed June 2, 2005 and Intervenor HiPerformance, L.L.C.'s Motion to Intervene

and Brief in Support, filed August 18, 2005. Having considered Defendant Horschel Brothers

Precision, LLC's Motion to Dismiss and Brief in Support, the response, reply, and supplemental

briefing[1], along with all supporting exhibits and the applicable law, the court **grants** Horschel

Brothers Precision, LLC's Motion to Dismiss. Further, having considered Intervenor

HiPerformance, L.L.C.'s Motion to Intervene and Brief in Support, the response, reply, as well as

---

[1]Although Defendant Horschel Brothers Precision, LLC ("Horschel Brothers") filed its motion to dismiss on June 2, 2005, the court held the motion in abeyance until November 7, 2005, after granting WRR's request to conduct expedited discovery pertaining to Horschel Brothers's contacts with Texas. Following this period of discovery, on November 7, 2005, WRR filed its Supplemental Response to Horschel Brothers' motion to dismiss. On November 22, 2005, Horschel Brothers filed a reply to WRR's supplemental response.

**Memorandum Opinion and Order – Page 1**

all supporting exhibits and the applicable law, the court **denies** HiPerformance, L.L.C.'s Motion to Intervene.

## I.    Factual and Procedural Background

This lawsuit involves competitors in the business of turbocharger development, manufacturing and sales.[2]  At issue is the rights to certain "tooling," which is used by parts suppliers to manufacture the components used in turbochargers.  Plaintiff WRR Industries, Inc. ("WRR" or "Plaintiff"), a Texas corporation with a principal place of business in Dallas, Texas, licensed intellectual property relating to turbochargers (the "Licensed Property") to Aerodyne Corporation ("Aerodyne"), a New York corporation with a principal place of business in Batavia, New York. In exchange, Aerodyne agreed, among other things, to allow its tooling to be used by WRR at no cost to produce 800 turbocharger units, and also agreed to allow WRR and its licensees to purchase turbocharger components and parts from any of Aerodyne's suppliers and vendors.  *See* September 23, 2002 Licensing Reinstatement Agreement (the "2002 Licensing Agreement").  HiPerformance, LLC ("HiPerformance"), who seeks to intervene as a Plaintiff in this action, is a licensee of WRR and was a party to the 2002 Licensing Agreement for the limited purpose of releasing Aerodyne from all claims and causes of action.  *See* 2002 Licensing Agreement ¶ 26.

In or around November 2003, Aerodyne ceased doing business and sought to sell the assets stored at a facility located at 151 Regal Row, in Dallas, Texas, which premises it leased from Defendant Prologis, a real estate investment trust (the "leased premises").  To that end, in 2004, James M. Czekala ("Czekala"), President of Aerodyne, and Louis A. Horschel ("Horschel"),

---

[2] As the parties are familiar with the facts underlying this lawsuit, the court limits its factual analysis to those facts germane to the court's resolution of the pending motions.  A more comprehensive recitation of the facts pertaining to this lawsuit can be found in the court's September 14, 2005 memorandum opinion and order.

**Memorandum Opinion and Order – Page 2**

Manager and Member of Defendant Horschel Brothers Precision, LLP ("Horschel Brothers"), a New York limited liability corporation located in Springville, New York, entered into negotiations regarding the sale of Aerodyne's assets at the leased premises.

In August 2004, Prologis brought suit against Aerodyne and one its lienholders (Kelly Aerospace), in Texas state court for recovery of rent and foreclosure of its liens. Subsequently, Horschel and his attorneys in New York contacted Prologis's attorneys in Austin, Texas by telephone and e-mail regarding satisfying Aerodyne's overdue rent, and asked them to hold off on a landlord's foreclosure action to allow Horschel time to purchase Aerodyne's assets. Thereafter, in further preparation for purchasing Aerodyne's assets at the leased premises, Horschel Brothers purchased Aerodyne's indebtedness to two secured creditors, Kelly Aerospace (a Delaware corporation with a principal place of business in Alabama), and Manufacturers and Traders Trust Company (a New York corporation with a principal place of business in Buffalo, New York). Both debts were secured by liens on property located in Texas.

On or about November 19, 2004, Horschel Brothers formed HBP-Aerodyne, LLC, a New York limited liability corporation, as a wholly owned subsidiary, for the purpose of purchasing Aerodyne's assets. On or about November 24, 2004, HBP-Aerodyne and Aerodyne closed on an Asset Purchase Agreement under which HBP-Aerodyne purchased all of Aerodyne's ownership interest in the turbocharger assets, *except* intellectual property licensed to Aerodyne by WRR in the 2002 Licensing Agreement.[3] That same day, Horschel traveled to Dallas, Texas. Most, if not all, of the travel expenses for Horschel's trip, including airfare, meals, and lodging were paid for by Horschel Brothers. Upon arrival, Horschel met with Gerhard Schruf of Irving, Texas (formerly an

---

[3]The scope of this exception to the Asset Purchase Agreement informs much of the parties' dispute in this lawsuit.

**Memorandum Opinion and Order – Page 3**

Aerodyne employee) at the leased premises, along with the landlord, in preparation for removing Aerodyne's property from the leased premises.  Horschel gave Prologis a $60,000 check issued by HBP-Aerodyne to pay Aerodyne's overdue rent at the leased premises so that HBP-Aerodyne could take delivery of the assets.  On November 26, 2004, Horschel and ten Horschel Brothers' employees he had on hand were prepared to take delivery of Aerodyne's former assets.  They were unable to take delivery, however, because of a temporary restraining order issued by Judge Barbara M.G. Lynn that same day in a lawsuit WRR had filed against Defendant Prologis seeking injunctive relief and a declaration as to WRR's ownership of the Licensed Property at the leased premises. The November 26, 2004 temporary restraining order ultimately resulted in the sequestration of, *inter alia*, certain turbocharger engineering drawings and the information they contained (the "Sequestered Property").[4]      On December 2, 2004, Defendant HBP-Aerodyne moved to intervene in this lawsuit, contending that, based on the Asset Purchase Agreement, it was either the sole owner or, at a minimum the joint owner of the Sequestered Property with WRR, and therefore had immediate right to access and use the Sequestered Property to start its turbocharger business.  By order dated January 27, 2005, the court granted HBP-Aerodyne's motion to intervene.

In or around December 2004, following the Asset Purchase Agreement, Horschel wrote letters to Aerodyne's parts suppliers informing them that, following the November 24, 2004 Asset Purchase Agreement, the casting tooling to make the turbocharger parts belonged to HBP-Aerodyne

---

[4]Following issuance of the November 26, 2004 temporary restraining order ("TRO"), on December 1, 2004, Judge Jerry Buchmeyer ordered that the TRO was to remain in effect and referred Plaintiff's request for injunctive relief to Magistrate Judge Paul Stickney for a hearing on December 3.  Following the hearing, the magistrate judge extended the TRO until December 8. Following another hearing on December 7, Magistrate Judge Stickney issued a Supplemental Order, dated December 9, ordering that the Sequestered Property be placed in an independent secured storage facility until further order of the court.  On January 3, 2005, Magistrate Judge Stickney issued a Protective Order for Sequestered Property, delineating the parameters of the sequestration and the rights of access to the Sequestered Property.  The Supplemental Order and Protective Order for Sequestered Property are still in place.

and was for its exclusive use.  The letters further stated: "THIS LETTER SPECIFICALLY PROHIBITS YOU FROM SELLING PARTS TO ANYONE ELSE FROM THESE TOOLS." Ex. D to Plf. Resp. to Def. Mot. to Dismiss (original emphasis).  The letter also prohibited the parts suppliers from shipping on any open orders.

On April 28, 2005, with leave of court, WRR filed its Second Amended Complaint adding Horschel Brothers as a defendant.[5]  On June 2, 2005,  Defendant Horschel Brothers filed a motion to dismiss for lack of *in personam* jurisdiction.  On August 18, 2005, the court held a hearing on WRR's request for a temporary restraining order wherein WRR sought to restrain Horschel Brothers and HBP-Aerodyne from interfering with its, and its licensees', alleged right to purchase aerocharger components and parts from Aerodyne's suppliers.[6]   That same day, HiPerformance moved to intervene in this action seeking to similarly restrain Horschel Brothers and HBP-Aerodyne from interfering with its alleged right to purchase aerocharger components and parts from Aerodyne's suppliers.

The court will first address Horschel Brothers' motion to dismiss and then address HiPerformance's motion to intervene.

---

[5]  In its Second Amended Complaint, WRR alleges five causes of action: declaratory judgment (Count I); conversion (Count II); interference with (and conspiracy to interfere with) existing and prospective contractual relations (Count III); fraud and conspiracy to perpetuate fraud (Count IV), and application for injunctive relief (Count V) pursuant to Fed. R Civ. P. 65.  Specifically, with regard to its application for injunctive relief (Count V), WRR sought to enjoin HBP-Aerodyne and Horschel Brothers from (i) using any information relating to the design and manufacturing of the aerocharger obtained by Aerodyne from WRR; (ii) interfering with WRR's right to purchase parts and components from Aerodyne's suppliers; and (iii) manufacturing and selling any aerocharger product that in any way incorporated any of the Licensed Property.

[6]Following the hearing, the court denied WRR's request for injunctive relief, determining that WRR had failed to fulfill the requirements of Fed. R. Civ. P. 65.  *See* Mem. Op. and Order (Sept. 14, 2005).

**Memorandum Opinion and Order – Page 5**

II.       **Horschel Brothers Precision, LLC's Motion to Dismiss**

Defendant Horschel Brothers moves to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of *in personam* jurisdiction.  In support, Horschel Brothers submitted the affidavit of Louis Horschel, in which he stated that Horschel Brothers lacked any contacts with Texas.  WRR filed its response on June 22, 2005.  In its response, WRR asked the court to deny Horschel Brothers's motion or, in the alternative, allow it limited discovery regarding "Horschel's contacts with the State of Texas in order to offer contradictory evidence to the conclusory statements in Louis Horschel's affidavit denying general or specific jurisdiction."  *See* Pl. Resp. to Def. Mot. to Dismiss at 14.  Horschel Brothers filed a reply on July 7, 2005.  On September 14, 2005, the court granted WRR's request for limited and expedited discovery, giving WRR until October 31, 2005 to complete discovery and until November 7, 2005 to supplement its response.  On November 7, 2005, WRR filed its supplemental response, along with a lengthy appendix of supporting evidence. On November 22, Horschel Brothers filed a reply to WRR's supplemental response, along with supporting evidence.

A.       **Legal Standard**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a *prima facie* case for the court's jurisdiction over a nonresident defendant.  *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction is proper. *Ham*, 4 F.3d at 415.  Proof by a preponderance of the evidence is not required.  *International Truck and Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003)  (citing *WNS, Inc. v.*

*Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.  *Stuart*, 772 F.2d at 1192.  Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  After a plaintiff makes his *prima facie* case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution.  *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir. 1993).  Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice."  *Ruston Gas*, 9 F.3d at 418 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 475.  The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or as a result of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King*, 471 U.S. at 277)). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

## B.     Analysis

In its supplemental response to Horschel Brothers Motion to Dismiss, WRR sets out the

following "summary of evidence" in support of *in personam* jurisdiction over Horschel Brothers:

1.     Horschel Brothers began negotiating with Prologis and Aerodyne for purchase of Aerodyne's assets at 151 Regal Row in Dallas, Texas as early as June 2004, nearly 5 months before HBP Aerodyne, LLC, its wholly owned subsidiary, was formed.

2.     Up until October or November of 2004, all of the communications from Louis Horschel or Dave Murray indicated it was "Horschel Brothers Precision" that was interested in purchasing Aerodyne's assets.

3.     Prologis and its counsel referred to Mr. Horschel's company as "Horschel Brothers."

4.     HBP-Aerodyne was not organized as an LLC until November 19, 2004.

5.     Horschel Brothers has ordered product from suppliers in Texas.

6.     Horschel Brothers has delivered payment for product in Texas.

7.     Horschel Brothers has shipped product to Texas.

8.     Horschel Brothers solicited and entered into various forebearance agreements relating to Prologis' state court action against Aerodyne Corporation in order to give Horschel Brothers more time to complete its transaction with Prologis and Aerodyne.

9.     HBP-Aerodyne was formed as Horschel Brothers' wholly owned subsidiary in order to be the purchasing entity of the Aerodyne assets. However, it was Horschel Brothers, not HBP-Aerodyne, [that] was the entity who acquired the debt and liens of two lienholders who held alleged security interests on the contents of 151 Regal Row in Dallas.

10.    Horschel Brothers made numerous phone calls and e-mailed to and from Texas regarding the Aerodyne asset purchase, as well as phone calls to a Texas supplier of HiPerformance.

11.    Horschel Brothers had numerous contacts with Gerhard Schruf, a Texas resident and former Aerodyne employee.  Mr. Schruf was named as a consultant in the Asset Purchase Agreement.  Mr. Schruf also assisted Mr. Horschel in inspecting the

contents of 151 Regal Row.  In earlier conversations, Mr. Schruf also provided Mr. Horschel with information regarding the design of the turbocharger and Aerodyne's inventory.

12.    HBP-Aerodyne has no employees.  All of the people who assisted Mr. Horschel in Dallas were Horschel Brothers Precision employees.

13.    Most of the travel expenses for those employees were paid by Horschel Brothers Precision.

14.    In the first half of 2004, Horschel Brothers knew or should have known that WRR had a license agreement with Harley-Davidson for turbochargers, yet Horschel Brothers communicated with Harley-Davidson in an attempt to interfere with such license agreement.

*See* WRR Supp. Resp. to Def. Mot. to Dis. at 7-8 ("Supp. Resp.").

### 1.    Specific Jurisdiction

The court considers first whether it may exercise specific jurisdiction over Defendant Horschel Brothers.  The court begins by addressing those contacts asserted by WRR preceding the November 24, 2004 Asset Purchase Agreement.  These contacts include negotiations between Horschel Brothers and Aerodyne and Prologis regarding the potential purchase of Aerodyne's corporate assets several months prior to the November 24, 2004 Asset Purchase Agreement, Louis Horschel's telephone calls and e-mails with Prologis's attorneys in Austin, Texas concerning Prologis's overdue rent at the leased premises (ultimately resulting in payment of a check in the amount of $60,000 issued by HBP-Aerodyne to pay the rent), and Horschel Brothers' purchase of Aerodyne's indebtedness to two (non-Texan) secured creditors where both debts were secured by liens on property located in Texas.

In its brief in reply to WRR's Supplemental Response, Horschel Brothers argues that the above-stated contacts upon which WRR relies fail to establish specific jurisdiction over Horschel Brothers, as WRR's alleged injuries do not arise out of those contacts, all of which occurred prior

**Memorandum Opinion and Order – Page 10**

to the November 24, 2004 Asset Purchase Agreement, the contract from which WRR's claims

against Horschel Brothers arise.  *See* Def. Reply. to WRR Supp. Resp. at 1-2.  As Horschel Brothers

contends:

> This litigation involves two categories of property: the property sequestered by Magistrate Judge Paul D. Stickney in December of 2004 ("Sequestered Property") and the former tooling of Aerodyne Corporation which was the subject of the Court's hearing on August 18, 2005 on WRR's motion for preliminary injunction . . . WRR's alleged damages do not relate to the Sequestered Property because HBP-Areodyne never took possession of it.  Instead, WRR took possession of the Sequestered Property and stored it pursuant to Judge Stickney's order . . . The real litigation by WRR against Horschel Brothers is for alleged damages arising out of actions taken by Louis Horschel on behalf of Aerodyne Corporations with respect to the tooling after HBP-Aerodyne purchased it from Aerodyne Corporation on November 24, 2004.  In its motion for leave to file its Second Amended Complaint seeking to join Horschel Brothers as an additional party defendant, WRR stated that "[t]he Second Amended Complaint includes claims that are attributable to acts of Defendant HBP and/or its parent, Horschel Brother Precision, LLC, *after* the date of the filing of this case that arise from the underlying subject matter of this action, namely HBP's alleged purchase of the assets of Aerodyne.  Therefore, these claims were not known at the time of the filing of this action. (emphasis in original)."

*Id.* at 1-2 (footnote omitted).[7]

The court agrees with Horschel Brothers. As set forth above, specific jurisdiction is only

appropriate when the nonresident defendant's contacts with the forum state arise from, or are

directly related to, the cause of action.  *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414

n.8; *see also Burger King*, 471 U.S. at 472 (same).  The nonresident defendant's availment must be

---

[7]Counsel for WRR also recognized the distinction between the two categories of property at the August 18, 2005 hearing, stating: "Under [the 2002 Licensing Agreement], there is also another ancillary action that Judge Stickney has already looked at [and it] has to do with the intellectual property and who has superior rights to that.  *That is not before the court this morning*.  But there [have] been several orders entered by Judge Stickney protecting the intellectual property[.] [W]e obtained a TRO when we filed this action to preserve the intellectual property and [it] is now stored in a  warehouse subject to a protective order."  *See* Hearing Trans. at 6.

**Memorandum Opinion and Order – Page 11**

such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

With regard to Defendant Horschel Brothers, WRR's alleged injuries arise out of Louis Horschel's actions with respect to the tooling following the November 24, 2004 Asset Purchase Agreement, not the actions leading up to Magistrate Judge Stickney's orders regarding the Sequestered Property and not Horschel Brothers' payment of Aerodyne's overdue rent at the leased premises or its purchase of Aerodyne's indebtedness to two (non-Texan) secured creditors, or any contacts with Harley-Davidson. Horschel Brothers' contacts with Prologis's attorneys and/or Aerodyne prior to the Asset Purchase Agreement are too attenuated, as they do not arise from or directly relate to the contract which forms the basis of WRR's lawsuit against Horschel Brothers, namely the November 24, 2004 Asset Purchase Agreement. *See, e.g., FNC International v. ABB Lummus Global, Inc.*, 2005 WL 1745462 at *5 (S.D. Tex. July 22, 2005) (contacts with State of Texas prior to formation of contract which forms the basis of lawsuit too attenuated from cause of action to be relevant to specific jurisdiction); *see generally Burger King*, 471 U.S. at 475 (citations omitted) (random, fortuitous, or attenuated contacts are insufficient to establish specific jurisdiction).

In addition, Horschel Brothers' purchase of Aerodyne's indebtedness to two (non-Texan) secured creditors where both debts were secured by liens on property located in Texas is also insufficient to establish specific jurisdiction. *See Bryant v. Roblee*, 153 S.W.3d 626, 630 (Tex. App. – Amarillo 2004) (acquisition by a non-resident of debt secured by liens on property located in Texas does not subject creditor to the personal jurisdiction of Texas courts).

With regard to the presence of Horschel Brothers' employees at the leased premises to take delivery of assets on November 26, 2004, and the fact that Horschel Brothers paid for most, if not

**Memorandum Opinion and Order – Page 12**

all, of Horschel's travel expenses, WRR ultimately suffered no injuries from these actions, as counsel for WRR, Craig Henderson, arrived at the leased premises prior to delivery of the assets with a temporary restraining order issued by Judge Lynn, and the status quo has since been preserved. *See supra* note 4. As WRR suffered no injuries from these contacts, its cause of action against Horschel Brothers cannot arise from or be related to these activities in Texas.

The court now turns to Horschel's letters to Aerodyne's parts suppliers informing them that, following the November 24, 2004 Asset Purchase Agreement, the casting tooling to make the turbocharger parts belonged to HBP-Aerodyne and was for its exclusive use. The letters further stated: "THIS LETTER SPECIFICALLY PROHIBITS YOU FROM SELLING PARTS TO ANYONE ELSE FROM THESE TOOLS." *See, e.g.,* Ex. D to Plf. Resp. to Def. Mot. to Dismiss (original emphasis). The letter also prohibited the parts suppliers from shipping on any open orders. WRR alleges injuries arising from these letters. WRR complains that four of the suppliers (all located outside of Texas) refused to fill the orders of its licensee, HiPerformance, which is located in Arkansas, following Horschel's letters to them. Although at least one of these letters is written on Horschel Brothers Precision's stationery, the letter specifically states that "[t]his letter is to inform you that Horschel Brothers Precision LLC *through their wholly owned subsidiary HBP Aerodyne LLC* has acquired the assets of Aerodyne corporation." *See* Ex. D (emphasis added). Thus, the court concludes that these communications by Horschel were on behalf of HBP-Aerodyne. Even if they were not, using the wrong letterhead to write to suppliers not located in Texas is not the same as a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. Further, it is not the type of contact from which a defendant "should reasonably

anticipate being haled into court" in the forum state.  *World-Wide Volkswagen*, 444 U.S. at 297.[8]

Finally, although not explicitly argued by WRR, underlying certain of WRR's arguments is

the contention that Horschel Brothers and HBP-Aerodyne are one and the same.  As a general rule,

"a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its

subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship

is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  *Alpine View Co.*

*v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) (quoting *Hargrave v. Fibreboard Corp.*, 710

F.2d 1154, 1159 (5th Cir. 1983)).  In order to subject Horschel Brothers to the jurisdiction of this

forum, WRR would have to show that HBP-Aerodyne is the alter-ego of Horschel Brothers.  Under

Texas law, the alter-ego doctrine allows a court to impose liability on a corporation for the acts of

another corporation when the corporation committing the wrongdoing is organized or operated as

a mere tool or business conduit.  *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th

Cir.1999).  The doctrine applies when there is such unity between the two corporations that the

separateness of the two corporations has ceased, and holding only the acting corporation liable

would result in injustice. *See id.* Alter-ego is demonstrated by evidence of a blending of identities

or a blurring of lines of distinction between the two corporations. *See id.*  The Fifth Circuit has

developed a list of factors to consider when determining whether an alter-ego situation exists: (1)

---

[8]To the extent WRR can be heard to argue that specific jurisdiction can be exercised over Horschel Brothers because of its status as an  alleged co-conspirator with Aerodyne and/or Prologis in structuring a business transaction whereby Aerodyne would be free from royalty obligations to WRR or in conspiring to interfere with WRR and its licensees' alleged right to purchase the parts from vendors, the court rejects this argument.  *See Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir. 1984), *cert. denied*, 473 U.S. 907 (1985) (holding that the effects of alleged conspiracy in forum state are insufficient to grant court personal jurisdiction over nonresident co-conspirator); *see also Delta Brands, Inc. v. Danieli Corp.*, 2003 WL 22255699 at *7 (N.D. Tex. Sept. 29, 2003) (Godbey, J.) (and cases cited therein) (same), *aff'd*, 99 Fed. Appx. 1 (5th Cir. 2004).

**Memorandum Opinion and Order – Page 14**

common stock ownership; (2) common directors or officers; (3) common business departments; (4) consolidated financial statements and tax returns; (5) one corporation finances the other; (6) one corporation caused the incorporation of the other; (7) one corporation operates with grossly inadequate capital; (8) one corporation pays the salaries and other expenses of the other; (9) one corporation receives no business except that given to it by the other; (10) one corporation uses the other's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) one corporation does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings. *See Gundle Lining Constr. Corp. v. Adams Co. Asphalt, Inc.*, 85 F.3d 201, 208 (5th Cir.1996).   Ties through "stock ownership, shared officers, financing arrangements, and the like" do not, by themselves, establish an alter-ego relationship.   *Gardemal*, 186 F.3d at 593.   Thus, "one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil."   *Id.* at 594 (citation omitted).   Rather, "the degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." *Alpine View*, 205 F.3d at 219 (citations omitted).

WRR asserts that HBP-Aerodyne has no employees of its own, that Horschel Brothers used its own letterhead when it directed vendors not to ship parts using the tooling at issue, that Prologis and its counsel referred to Mr. Horschel's company as "Horschel Brothers," that up until October or November of 2004, all of the communications from Louis Horschel or Dave Murray indicated it was "Horschel Brothers Precision" that was interested in purchasing Aerodyne's assets, and that Horschel Brothers received an income tax credit for equipment purchased by HBP-Aerodyne.   These factors, without more, are inadequate to demonstrate that HBP-Aerodyne was the alter-ego of

Horschel Brothers.  Accordingly, any contacts by HBP-Aerodyne cannot be imputed to Horschel

Brothers under the alter-ego doctrine.  *See Gundle Lining*, 85 F.3d at 201; *Gardemal*, 186 F.3d at

593-94.

In short, having considered the totality of Horschel Brothers' contacts with the forum state,

the court determines that it does not have specific jurisdiction over Horschel Brothers.

## 2.    General Jurisdiction

The exercise of general personal jurisdiction is proper when the nonresident defendant's

contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic,

and substantial.  *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.9.  Cases involving

general jurisdiction suggest that the threshold contacts required for assertion of such jurisdiction are

very substantial.  *See Davis v. Billick*, 2002 WL 1398560 at * 3 (June 26, 2002 N.D. Tex.)

(Fitzwater, J.) (citing *Helicopteros Nacionales*, 466 U.S. at 416-19 ) (concluding there was no

general jurisdiction where defendant traveled to Texas to negotiate sale of helicopters, regularly

purchased helicopters in Texas, and sent pilots for training to Texas).  Other than citing a few

incidental payments remitted to Texas and negligible purchases, WRR had not alleged any facts that

typically underlie general jurisdiction, such as property ownership, payment of taxes, frequent travel,

regular conduct of business, or maintenance of bank accounts in Texas.  *See generally Middlebrook

v. Anderson*, 2005 WL 350578 at *3 n.4 (Feb. 11, 2005  N.D. Tex.) (Fitzwatrer, J.).  Thus, the court

determines that WRR has failed to make out a *prima facie* case of general jurisdiction.

In short, the court determines that WRR has failed to meet its burden of establishing a *prima

facie* case of specific or general jurisdiction over Horschel Brothers.  Accordingly, Horschel

Brothers' Motion to Dismiss for lack of *in personam* jurisdiction should be granted.

**Memorandum Opinion and Order – Page 16**

III.    **HiPerformance's Motion to Intervene**

HiPerformance seeks to intervene pursuant to Fed. R. Civ. P. 24(a) (mandatory intervention) and Fed. R. Civ. P. 24(b) (permissive intervention).  Defendant HBP-Aerodyne opposes the motion.

A.    **Legal Standard**

A party may intervene in a lawsuit as of right if: (1) the intervention is timely; (2) the party has an interest in the subject matter of the action; (3) the disposition of the case may impair or impede the party's ability to protect that interest; and (4) the party is not adequately represented by the existing parties.  Fed. R. Civ. P. 24(a)(2).  "Although failure to satisfy any one element precludes the applicant's right to intervene," the Fifth Circuit has noted that, "the inquiry under section (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application[.]"  *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005); *see also Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1995) ("Federal courts should allow intervention where no one would be hurt and greater justice could be obtained").  A party may intervene in a lawsuit by permission of the court, "[u]pon timely application . . . when an applicant's claim or defense and the main action have a question of law and fact in common."  Fed. R. Civ. P. 24(b)(2).

B.    **Analysis**

In support of mandatory intervention, HiPerformance contends that: (i) it has "an interest relating to the property or transaction which is the subject of this action (e.g., the aerocharger property information, the right to use the tooling under the [2002 License Agreement], and the alleged purchase transaction by HBP-Aerodyne and subsequent wrongful conduct"); and (ii) "WRR cannot adequately represent HiPerformance," since many of its "claims and/or damages are unique to HiPerformance."  *See* Reply at 2.  In support of permissive intervention, HiPerformance states

**Memorandum Opinion and Order – Page 17**

that its claims and the main action have a question of law and fact in common including Defendants'

tortious interference with its alleged right to use the tooling and Defendants' conspiracy to structure

a transaction whereby Aerodyne would be free from royalty obligations to WRR.  *Id.* at 4.

HBP-Aerodyne opposes the motion to intervene, contending that HiPerformance has failed

to meet the requirements for intervention under Fed. R. Civ. P. 24.  Among other things, HBP-

Aerodyne contends that HiPerformance's interests in this lawsuit are already adequately represented

by WRR, that HiPerformance should not be allowed to intervene when WRR has been diligently

pursuing the same relief for almost a year, and that HiPerformance's interest in the litigation is

remote, rather than direct and substantial, as HiPerformance was only a party to the 2002 License

Agreement between WRR and Aerodyne for the mere purpose of granting Aerodyne a release.  *See*

Def. Resp. at 1-2.

Having carefully considered the parties' legal arguments, the record in this case, and

applicable law, the court determines that HiPerformance's motion to intervene is untimely, and

should therefore be denied under both Fed. R. Civ. P. 24(a)(2) and 24(b)(2).

With regard to whether a motion to intervene is timely, courts should consider:

> Factor 1. The length of time during which the would-be intervenor actually or reasonably should have known of his interest in this case before he petitioned for leave to intervene.
>
> * * *
>
> Factor 2.  The extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case.
>
> * * *

**Memorandum Opinion and Order – Page 18**

Factor 3.  The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied.

* * *

Factor 4.  The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Ross*, 426 F.3d at 754 (and cases cited therein); *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977).

Having considered the four factors, the court determines that HiPerformance's motion to intervene is untimely, and should therefore be denied.  With regard to the first factor, as set forth directly below, although the record reveals that HiPerformance knew or reasonably should have known of its interest in this litigation by November 2004 (and December 2004 at the very latest), it waited until the August 18, 2005 hearing on WRR's motion for temporary restraining order and preliminary injunction to state its intention to file a motion to intervene in this case.  At the hearing, Craig Henderson, counsel for Plaintiff WRR, announced his appearance on behalf of both Plaintiff WRR *and* "intervenor HiPerformance."  *See* Hearing Trans. at 4.  After the court informed him that HiPerformace was not a party to the lawsuit, Mr. Henderson advised the court that he intended to file a motion to intervene on behalf of HiPerformance later that day, which he did.  *See*. *id.* at 4-5. Record evidence submitted by WRR establishes that HiPerformance knew of its stake in this action as of, at the latest, December 28, 2004, at which time Craig Henderson, acting on behalf of "WRR and HiPerformance," sent a letter to various Aerodyne suppliers and vendors regarding WRR and HiPerformance's alleged rights to use the vendors' tooling and rights to purchase certain components and parts under the 2002 Licensing Agreement.  *See, e.g.,* Ex. E to Pl. Resp. to Def. Mot. to Dismiss (December 24, 2004 letter from Craig Henderson to ABM Manufacturing).

**Memorandum Opinion and Order – Page 19**

HiPerformance  makes no attempt to explain why it waited until the day of the August 18, 2004 hearing (approximately nine months after it knew it had an interest in this action) to intervene. Moreover, HiPerformance's legal briefing does not even mention the timeliness requirement, a prerequisite to intervention, let alone try to explain to the court why its motion is timely.

As to the second factor, the court determines that the existing parties to the lawsuit would be prejudiced by HiPerformance's failure to apply for intervention as soon as it actually knew or reasonably should have known of its interest in the case.  It is undisputed that HiPerformance is seeking the same relief as WRR, and which formed the subject matter of the August 18 hearing, as well as extensive briefing by the parties, and a lengthy memorandum opinion and order by the court (*see* Mem. Op. and Order (Sept. 14, 2005)), namely, the contention that following the after the November 24, 2004 Asset Purchase Agreement between HBP-Aerodyne and Aerodyne, HBP-Aerodyne and Horschel Brothers knowingly and intentionally interfered with WRR's and HiPerformance's purchase orders by instructing those vendors not to supply aerocharger parts or fill any open orders.  *See* Reply at 2.  HiPerformance also seeks the same injunctive relief as sought by WRR (and denied by the court), namely, it seeks an order restraining and enjoining Horschel Brothers and HBP-Aerodyne from tortiously interfering with its alleged  right to purchase aerocharger components and parts from Aerodyne's suppliers.  As stated by Craig Henderson, counsel for WRR and the would-be intervenor HiPerformance, at the August 18 hearing in support of Hi-Performance's not-yet-filed motion to intervene: "we are asking for basically the same relief and the injunction on behalf of [HiPerformance] as we are for WRR.  The damages may be different, but the relief is essentially the same."  *See* Hearing Trans. at 5.  As set forth above, on August 18, 2005, the court held a hearing on this exact issue.  William Robert Riley, Jr., Vice-President of

HiPerformance, testified at length regarding HiPerformance's need for the parts and harm to its business caused by Horschel's instructions to the vendors and suppliers not to fulfill orders from purchasers. Were the court to allow intervention, Horschel Brothers and HBP Aerodyne would be forced to relitigate the identical issues already dealt with at the August 18, 2005 hearing and in the court's September 14, 2005 Memorandum Opinion and Order. Coupled with the lack of any explanation by HiPerformance for the dilatory nature of its motion to intervene, and given the numerous missed opportunities it had to intervene prior to the day of the hearing wherein the court took up the identical issues it now seeks to raise by intervention, this second factor weighs in favor of the court's finding of untimeliness.

As to the third factor, the court determines that HiPerformance will suffer little to no prejudice if the intervention is denied. Craig Henderson, on behalf of WRR, has been litigating all of the legal claims that HiPerformance seeks to raise in this action. Mr. Henderson, himself, informed the court that he is seeking the same relief for HiPerformance as for WRR. *See* Hearing Trans. at 5. This third factor weighs thus also weighs in favor of the court's finding of untimeliness. Finally, as to the fourth factor, the court determines that no unusual circumstances militate either for or against a determination that the application is timely. In short, after assessing all applicable factors (*see Ross*, 426 F.3d at 754), the court **denies** HiPerformance's motion to intervene as untimely under Fed. R. Civ. P. 24(a)(2) and 24(b)(2).[9]

---

[9]Alternatively, even were the motion timely, it should still be denied. First, HiPerformance has not shown an "interest" related to the transaction or property at issue in this case, as required under Fed. R. Civ. P. 24(a)(2). The Fifth Circuit defines a "direct, substantial, legally protectable interest in the action" required by Rule 24(a) as an interest that "the *substantive* law recognizes as belonging to or being owned by the applicant." *Cajun Elec. Power Co-op. v. Gulf States Utils.*, 940 F.2d 117, 119 (5th Cir.1991) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir.) (en banc), *cert. denied*, 469 U.S. 1019 (1984)) (emphasis in original). As HBP-Aerodyne correctly argues (*see* Def. Resp. at 2), HiPerformance was a party to the 2002 Licensing Agreement only as to paragraph 26 (wherein it released and discharged Aerodyne from all claims and causes of action it might have), and is therefore, at most, an incidental beneficiary under the 2002 Licensing Agreement between Aerodyne and WRR. Accordingly,

## IV.     Conclusion

For the reasons set forth above, the court determines that Plaintiff WRR has not established a *prima facie* case for this court's personal jurisdiction over Defendant Horschel Brothers Precision, LLC and HiPerformance, L.L.C. has not established the elements necessary for intervention. Accordingly, the court **grants** Defendant Horschel Brothers Precision, LLC's Motion to Dismiss and **denies** Intervenor HiPerformance, L.L.C.'s Motion to Intervene.

**It is so ordered** this 2nd day of February, 2006.

Sam A. Lindsay
United States District Judge

---

HiPerformance's motion to intervene should be denied for its failure to show a "direct, substantial, legally protectable interest in the action."   Second, as HPB-Aerodyne argues, HiPerformance has not met its burden of showing that its interests are not adequately represented by WRR.   *See* Def. Resp. at 1.   Though the court recognizes that the burden of showing inadequate representation is "minimal" (*see Ross*, 426 F.3d at 761), the court determines that HiPerformance has failed to meet its burden.   When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the applicant for intervention must show "adversity of interest, collusion, or non-feasance."   *Doe v. Duncanville I.S.D.*, 994 F.2d 160, 168 (5th Cir. 1993) (and cases cited therein); *see also Graham v. Evangeline Parish Sch. Bd.*, 132 Fed. Appx. 507, 513 (5th Cir. 2005) (same). Counsel for WRR, Craig Henderson, has stated that he is "asking for basically the same relief and the injunction on behalf of [HiPerformance] as . . . for WRR.   The damages may be different, but the relief is essentially the same."   *See* Hearing Trans. at 5.   Thus, a presumption arises that WRR is adequately representing HiPerformance's interest in this litigation.   HiPerformance has submitted no evidence, let alone legal argument, suggesting "adversity of interest, collusion, or non-feasance" by WRR.   Accordingly, HiPerformance's motion to intervene should be denied for its failure to show lack of adequate representation.

**Memorandum Opinion and Order – Page 22**