IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WRR INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| PROLOGIS, a Maryland Real Estate | § | |
| Investment Trust Company, | § | |
| HORSCHEL BROTHERS PRECISION, LLC, | § | Civil Action No. 3:04-CV-2544-L |
| A New York Limited Liability Company,[1] | § | |
| HBP-AERODYNE, LLC, | § | |
| A New York Limited Liability Company, | § | |
| and AERODYNE CORPORATION, | § | |
| A New York Corporation, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Prologis's Motion to Dismiss WRR's Claims and for

Summary Judgment, filed February 14, 2006; Plaintiff's Opposed Motion for Leave to File its Third

Amended Complaint and Memorandum of Authorities, filed May 1, 2006; and Opposed Motion of

Intervenor HBP-Aerodyne, LLC for Leave to File its First Supplemental Counterclaims, filed May

1, 2006.  Having considered the motions, responses, replies, record and applicable law, the court

**grants** Prologis's Motion to Dismiss WRR's Claims and for Summary Judgment; **denies** Plaintiff's

Opposed Motion for Leave to File its Third Amended Complaint; and **denies** Opposed Motion of

Intervenor HBP-Aerodyne, LLC for Leave to File its First Supplemental Counterclaims.

---

[1]By order dated February 2, 2006, the court granted Defendant Horschel Brothers Precision, LLC's Motion to Dismiss for lack of *in personam* jurisdiction.  Accordingly, Horschel Brothers Precision, LLC is no longer a party to this case.

**Memorandum Opinion and Order – Page 1**

I.      **Factual and Procedural History**

This lawsuit involves competitors in the nascent business of turbocharger development, manufacturing and sales.  At issue are the rights to certain "tooling," which is used by parts suppliers across the United States and in Europe to manufacture the components used in turbochargers, as well as the rights to certain property, including, without limitation, drawings, specifications and other documents, that are the subject of a sequestration order issued by Magistrate Judge Paul D. Stickney in December 2004.  A brief recitation of the factual background is necessary to understand the court's analysis of the pending motions.[2]

Plaintiff WRR Industries, Inc. ("WRR" or "Plaintiff") licensed certain intellectual property relating to turbochargers (the "Licensed Property"), to Defendant Aerodyne Corporation ("Aerodyne").  In exchange, Aerodyne agreed to allow its tooling to be used by WRR at no cost to produce 800 turbocharger units, and also agreed to allow WRR and its licensees to purchase turbocharger components and parts from any of Aerodyne's suppliers and vendors (hereinafter the "2002 Licensing Agreement").  HiPerformance, LLC ("HiPerformance"), who unsuccessfully sought to intervene as a plaintiff in this action, is a licensee of WRR.  *See* Mem. Op. & Order (February 2, 2006) (denying HiPerformance, LLC's motion to intervene).

Aerodyne leased premises at 151 Regal Row, in Dallas, Texas (the "leased premises") from Defendant Prologis ("Prologis"), an investment trust in the business of leasing commercial real estate.  In or around November 2003, Aerodyne ceased doing business and sought to sell the assets stored at the leased premises.  Aerodyne also defaulted on its rental obligations to Prologis and

---

[2]As the parties are familiar with the facts underlying this lawsuit, the court limits its factual analysis to those facts germane to the court's resolution of the pending motions.  A more comprehensive recitation of the facts pertaining to this lawsuit can be found in the court's September 14, 2005 memorandum opinion and order and in the court's February 2, 2006 memorandum opinion and order.

**Memorandum Opinion and Order – Page 2**

abandoned the leased premises leaving behind the assets.  Subsequently, in 2004, Louis A. Horschel ("Horschel"), Manager and Member of Horschel Brothers Precision, LLP ("Horschel Brothers"), entered into negotiations with Aerodyne regarding the sale of Aerodyne's assets at the leased premises.

In August 2004, Prologis brought suit against Aerodyne and one of its lienholders in Texas state court for recovery of rent and foreclosure of its liens (the "Texas suit").  WRR filed a petition in intervention in the Texas suit to determine priority in the contents of assets at the leased premises, and sought an immediate injunction and sequestration related to certain intellectual property Aerodyne allegedly left at the leased premises.  Prologis claimed no interest in the property Aerodyne had abandoned at the leased premises.[3]

Subsequently, Horschel contacted Prologis regarding satisfying Aerodyne's overdue rent, and asked Prologis to hold off on a landlord's foreclosure action to allow him time to purchase Aerodyne's assets.   To that end, in 2004, Horschel Brothers formed Defendant HBP-Aerodyne, LLC ("HBP-Aerodyne"), which on or about November 24, 2004, closed on an Asset Purchase Agreement with Aerodyne under which HBP-Aerodyne purchased all of Aerodyne's ownership interest in the turbocharger assets, except intellectual property licensed to Aerodyne by WRR in the 2002 Licensing Agreement.   On or around November 24, 2004, Louis Horschel met with representatives of Prologis at the leased premises and paid Aerodyne's overdue rent, in order that HBP-Aerodyne could take delivery of the assets.

---

[3]After HBP-Aerodyne purchased Aerodyne's assets and paid rent in arrears, Prologis dismissed its claims in the Texas suit.   The record contains no evidence that WRR did anything to prosecute its requests for injunctive relief in state court.

**Memorandum Opinion and Order – Page 3**

On November 26, 2004, Horschel's attempt to take delivery of the assets was thwarted by Plaintiff, who earlier in the day had filed this civil action against Prologis and obtained a temporary restraining order ("TRO"), which effectively prevented Horschel from taking delivery of the assets. WRR's lawsuit against Prologis, in addition to injunctive relief, sought a declaration as to WRR's ownership of the Licensed Property at the leased premises.  The TRO ultimately resulted in the sequestration at the leased premises of, *inter alia*, certain turbocharger engineering drawings and the information they contained (the "Sequestered Property").  On December 1, 2004, Judge Jerry Buchmeyer ordered that the TRO was to remain in effect and referred Plaintiff's request for injunctive relief to Magistrate Judge Paul Stickney for a hearing on December 3.

In the interim, on December 2, 2004, HBP-Aerodyne filed a motion to intervene in this lawsuit, contending that based on the Asset Purchase Agreement, it was either the sole owner or, at a minimum the joint owner of the Sequestered Property with WRR, and therefore had immediate right to access and use the Sequestered Property to start its turbocharger business.  Along with its motion, HBP-Aerodyne filed a voluminous appendix of evidence, including the Access Agreement between it and Prologis.[4]  HBP-Aerodyne also counterclaimed against WRR alleging that, after failing to purchase the assets of the now-defunct Aerodyne for itself, WRR embarked on an unlawful scheme to interfere with, delay, and hinder HBP-Aerodyne (the successful bidder) from taking possession of the assets and beginning to manufacture turbochargers in competition with WRR.  The counterclaim also included claims for intentional interference with business relationships, abuse of process and wrongful injunction.  Thereafter, Prologis filed similar counterclaims against WRR. The next day, on December 3, 2004, WRR amended its complaint, adding claims against HBP-

---

[4]By order dated January 27, 2005, the court granted HBP-Aerodyne's motion to intervene.

**Memorandum Opinion and Order – Page 4**

Aerodyne and Aerodyne, Inc. for interference with contracts and prospective business relations, fraud and conspiracy to perpetrate fraud.  *See* Pl. First Am. Compl. and App'n for Inj. Relief.

On December 3, 2004, all parties appeared before Magistrate Judge Stickney, who ordered WRR and HBP-Aerodyne to remove any property from the leased premises over which they disputed ownership.  Prologis provided the parties access to the leased premises.  Following the hearing, the magistrate judge extended the TRO until December 8.  Following another hearing on December 7, the magistrate judge issued a Supplemental Order, dated December 9, ordering that the Sequestered Property be placed in an independent secured storage facility until further order of the court.  On January 3, 2005, the magistrate judge issued a Protective Order for Sequestered Property, delineating the parameters of the sequestration and the rights of access to the Sequestered Property. The Supplemental Order and Protective Order for Sequestered Property are still in place.

On March 8, 2005, WRR sought leave to file its second amended complaint, adding Horschel Brothers as a defendant and alleging that Horschel Brothers also conspired with HBP-Aerodyne to circumvent the 2002 Licensing Agreement and to interfere with WRR's alleged rights with suppliers. *See* Pl. Sec. Am. Compl. and App'n for Inj. Relief.[5]  On April 26, the court granted WRR's motion.  *See* Order (Apr. 26, 2005).

---

[5]In its Second Amended Complaint, WRR alleges five causes of action: declaratory judgment (Count I); conversion (Count II); interference with (and conspiracy to interfere with) existing and prospective contractual relations (Count III); fraud and conspiracy to perpetuate fraud (Count IV), and application for injunctive relief (Count V) pursuant to Fed. R Civ. P. 65.  Specifically, with regard to its application for injunctive relief (Count V), WRR sought to enjoin HBP-Aerodyne and Horschel Brothers from (i) using any information relating to the design and manufacturing of the aerocharger obtained by Aerodyne from WRR; (ii) interfering with WRR's right to purchase parts and components from Aerodyne's suppliers, and (iii) manufacturing and selling any aerocharger product that in any way incorporated any of the Licensed Property.  WRR complained that Horschel Brothers had written letters to Aerodyne's parts suppliers informing them that, following the November 24, 2004 Asset Purchase Agreement, the casting tooling to make the turbocharger parts belonged to HBP-Aerodyne and was for its exclusive use.  The letters also prohibited the parts suppliers from shipping on any open orders.

**Memorandum Opinion and Order – Page 5**

On February 14, 2006, Prologis filed its Motion to Dismiss WRR's Claims and for Summary Judgment, contending that WRR's request for declaratory and injunctive relief should be dismissed as moot and its conversion claim dismissed as a matter of law.  Thereafter, WRR replaced its attorney, Mr. Craig Henderson, with Mr. Mark Murphy.  After receiving numerous agreements from Prologis's counsel to extend the time to respond to Prologis's pending motion, on May 1, 2006, the deadline for seeking leave to amend pleadings, WRR, by and through its new attorneys of record, filed Plaintiff's Opposed Motion for Leave to File its Third Amended Complaint.  That same day, HBP-Aerodyne filed its Opposed Motion of Intervenor HBP-Aerodyne, LLC for Leave to File its First Supplemental Counterclaims.

The court will address the pending motions in the following order: (i) Plaintiff's Opposed Motion for Leave to File its Third Amended Complaint; (ii) Opposed Motion of Intervenor HBP-Aerodyne, LLC for Leave to File its First Supplemental Counterclaims; and (iii) Prologis's Motion to Dismiss WRR's Claims and for Summary Judgment.

## II.    Analysis

### A.    Plaintiff's Opposed Motion for Leave to File its Third Amended Complaint

#### 1.    Legal Standard

Under Fed. R. Civ. P. 15(a), other than in circumstances which do not apply here, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Although Rule 15(a)

> evinces a bias in favor of granting leave to amend, such leave is not automatic.  In deciding whether to allow amendment, a district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.

**Memorandum Opinion and Order – Page 6**

*Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998) (internal quotations footnotes, brackets and citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion for leave should not be denied "unless there is a substantial reason to do so." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).

###     2.     Discussion

WRR seeks leave to file a third amended complaint to "further clarif[y] the claims made by Plaintiff as to Defendant Prologis, in a manner consistent with the claims as addressed in the Plaintiff's recent response to the Motion to Dismiss and for Summary Judgement filed by Defendant Prologis." *See* WRR Mot. for Leave to Amend at 1-2. In addition, WRR contends that its proposed Third Amended Complaint "conforms the identity of the defendants and the claims asserted against defendants in accordance with the Court's February 2, 2006 Order, which dismissed Defendant [Horschel Brothers] as a party on jurisdictional grounds." *Id.* at 1. WRR argues that its amendment is timely filed under the court's Scheduling Order and "arises from the same set of underlying facts and the same conduct, transaction, or occurrence as the existing claims." *Id.* Finally, WRR contends that "[n]o prejudice will accrue to any party in allowing this amendment, and justice will be served by allowing it." *Id.* at 2.

Though WRR, in its three page motion, does not set forth the exact claims and allegations it seeks to add, the court has reviewed the proposed third amended complaint and determined that, essentially, WRR is now seeking to make Prologis jointly and severally liable with HBP-Aerodyne in all the causes of action it alleged against HBP-Aerodyne in the Second Amended Complaint (*see supra* n.5). WRR's new allegations are that: (1) Prologis interfered with a license agreement WRR alleges it had with Aerodyne; (2) Prologis interfered with and/or conspired to interfere with WRR"s

prospective business relationships with Harley-Davidson and other unnamed third parties; (3) Prologis defrauded and conspired to defraud WRR; and (4) Prologis acted maliciously to injure WRR and should be punished through exemplary damages.  WRR also alleges that Prologis converted its property.

Prologis opposes WRR's motion, and contends that leave to amend should be denied, notwithstanding that WRR filed its motion on May 1, 1006, the deadline for amendment of pleadings under the court's Scheduling Order.  Specifically, Prologis contends that the court should deny WRR's motion since: (1) WRR has unduly delayed in seeking to amend its pleadings for the third time, and allowing the amendment following this undue delay would be unfairly prejudicial to Prologis; (2) WRR's motion is dilatory and not filed in good faith; and (3) the amendment would be futile.  *See* Prologis Brief at 6-12.   Having considered the parties' arguments, briefs, record, appendices and applicable law, the court determines that WRR's motion for leave to amend should be denied, as WRR engaged in undue delay, amendment would be prejudicial to Prologis, and evidence is present that the amendment is not made in good faith.  *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (and cases cited therein) (in deciding whether to grant leave to amend, court may consider factors of undue delay, bad faith or dilatory motive on part of movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to opposing party, and futility of amendment).

First, as Prologis correctly points out, the facts upon which the proposed new claims rest have been known by WRR since, at the earliest, the inception of this case, and at the latest, when it filed its Second Amended Complaint on December 3, 2005.  *See* Prologis Brief at 7-8.   All that is new is WRR's counsel of record.  A brief review of the succession of previously amended

pleadings is in order.  On November 26, 2004, WRR filed this lawsuit against Prologis, seeking injunctive relief and a declaration as to WRR's ownership of the Licensed Property at the leased premises.  On December 3, 2004, one day after HBP-Aerodyne sought to intervene in this case, WRR amended its complaint, adding claims against HBP-Aerodyne and Aerodyne, Inc. for interference with contracts and prospective business relations, fraud and conspiracy to perpetrate fraud.  *See* Pl. First Am. Compl. and App'n for Inj. Relief.  At that time, WRR had before it the facts pertaining to Prologis's alleged involvement in this case, including the Access Agreement between Prologis and HBP-Aerodyne relating to the leased premises, and the details of their business relationship.  *See* Appx. to HBP-Aerodyne Mot. to Intervene at 29-32.  On March 8, 2005, WRR sought leave to file its second amended complaint, adding Horschel Brothers as a defendant and alleging that Horschel Brothers also conspired with HBP-Aerodyne to circumvent the 2002 Licensing Agreement and to interfere with WRR's alleged rights with suppliers.  On April 26, the court granted WRR's motion.  *See* Pl. Sec. Am. Compl. and App'n for Inj. Relief.  The court determines there is no reason Prologis could not have included its claims against Prologis at this juncture, other than that its attorney chose not to do so.  Instead, WRR waited until May 1, 2006, the deadline to amend pleadings, to assert these claims.

The court also agrees with Prologis that allowing the amendment would cause undue prejudice.  First, the new claims fundamentally alter the character of the case as to Prologis and the type of damages that would be allowed.  As Prologis states, "[a]fter having 18 months to consider and develop its damage theories, WRR is springing theories at the last second on the eve of the expert designation deadline.  There is literally no way that Prologis could retain the experts, conduct analysis, prepare designations and be ready to defend against such theories."  *See* Prologis Brief at

7.  Moreover, Prologis has already filed a motion to dismiss and for summary judgment.  WRR admits that its proposed amended complaint is in response to Prologis's dispositive motion.  The court agrees with Prologis that such tactical calculus in the face of a pending dispositive motion supports denial on the grounds of bad faith and dilatory motive.  *See Wimm*, 3 F.3d at 139 (affirming denial of motion for leave to amend where, among other things, record reflected that motion was interposed by plaintiff in an effort to avoid a previously filed summary judgment motion).

Finally, the record reveals that WRR's new counsel sought two extensions of time to respond to Prologis's dispositive motion, and expressed to Prologis's counsel that settlement was in the works, but refused to settle when Prologis would not agree to drop its counterclaims.  *See* Prologis Brief at Exh. A.  Only after Prologis refused to drop its counterclaims in exchange for WRR nonsuiting its claims against Prologis, did WRR seek leave to file its third amended complaint.  The correspondence between the parties (*see id.*), and the timing of WRR's motion for lave to amend suggest lack of sincerity and good faith on the part of WRR.

After considering the relevant factors articulated above and the parties' arguments, the court concludes that WRR's  motion should be denied.  Other than WRR's hiring new legal counsel, it is not clear to the court why the claims WRR now wishes to add could not have been asserted when the action was originally filed, or at the latest, in its Second Amended Complaint which the court granted WRR leave to file on April 26, 2005.  In addition to undue delay, Prologis has produced evidence that amendment is sought for dilatory reasons, is not in good faith and would be unduly prejudicial to Prologis and HBP-Aerodyne, in that it would necessitate an extension of deadlines and cause further delay in the resolution of this case.  Though arguably the court could extend the Rule 26(a)(2) deadlines and allow Prologis an extension of time to retain experts and assess WRR's new

theories of the case, such an extension would necessitate an extension of all other deadlines, including the trial date, further delaying the disposition of this case which has been pending since November 2004.  District judges have the power to control their dockets by refusing to give non-diligent litigants another chance to develop their case.  *See Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997); *see also Guillory v. Dotmar Industries Inc.*, 95 F.3d 1320, 1332 (5th Cir. 1996) ("It is well established that the district court is entitled t[o] manage its courtroom and docket."); *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967) ("A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.").  Not only would granting leave have an adverse impact on the timely resolution of this case, it would also affect other settings on the court's docket.  Under the circumstances presented, the court determines there is no reasonable justification for such delay.  Accordingly, the court **denies** WRR's Motion for Leave to Amend Complaint.

### B.    Opposed Motion of Intervenor HBP-Aerodyne, LLC for Leave to File its First Supplemental Counterclaims

HBP-Aerodyne has moved to file its first supplemental counterclaims.   HBP-Aerodyne seeks to supplement its counterclaim to allege that in February 2006, WRR, as part of its attempt to keep HBP-Aerodyne from using the tooling, wrongfully informed Castwell Products, Inc. of Skokie, Illinois ("Castwell") (one of the parts suppliers in possession of "tooling" needed to make turbochargers) that HBP-Aerodyne might not have good title to the tooling, and that WRR, and not HBP-Aerodyne, owned the tooling.  *See* HBP-Aerodyne Mot. at 3.  According to HBP-Aerodyne, WRR's tortious interference prevented it from obtaining possession of the tooling from Castwell, resulting in monetary damages.

**Memorandum Opinion and Order – Page 11**

WRR opposes HBP-Aerodyne's motion, contending that allowing such an amendment would subject it to the possibility of irreconcilable, inconsistent judgment.  Specifically, WRR informs the court that pending in federal court in the Northern District of Illinois is an interpleader action, styled *Castwell Products, Inc. v. WRR Industries, Inc., HiPerformance LLC, and HBP-Aerodyne LLC*, No. 1:06-CV-00952 (the "Illinois Interpleader Action").  The Illinois Interpleader Action was filed on February 21, 2006, and raises the tooling dispute involving Castwell  which is the subject of HBP-Aerodyne's proposed supplement to its counterclaims.  In addition to the possibility of two federal courts reaching inconsistent and irreconcilable decisions regarding who has rights to the Castwell tooling, WRR contends that HBP-Aerodyne knew the facts underlying the proposed supplement as of February 2006, but nevertheless waited until May 1, 2006 to seek leave of court to supplement its counterclaim.  In the meanwhile, WRR served an initial set of expert reports, none of which addresses the new proposed counterclaim, and allowing the supplement would force WRR to take significant additional discovery from Castwell and each of the unnamed third party tooling suppliers named in the proposed counterclaim.

Under Rule 15(d), the court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.  *See* Fed.R.Civ.P. 15(d).  While Rule 15(a) provides that "leave should be freely granted, the text of Rule 15(d) does not similarly provide.  Rule 15(d) is clear that the court *may* permit a supplemental pleading setting forth changed circumstances."  *Burns v. Exxon Corp.*, 158 F.3d 336, 343 n.5 (5th Cir. 1998).

Having considered the parties' arguments, the record and the applicable law, the court determines that, in light of the previously-filed parallel action in the Northern District of Illinois

concerning HBP-Aerodyne and WRR's competing and adverse interests in the Castwell tooling, HBP-Aerodyne's motion for leave to supplement should be denied.  Under the first-to-file rule, a court may "prophylactically refus[e] to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court" in order to "maximize judicial economy and minimize embarrassing inconsistencies[.]"  *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999) (original emphasis).  The risk of inconsistent decisions and concerns of judicial economy far outweigh any argument by HBP-Aerodyne that leave should be allowed under Rule 15(d).  Further, the court is surprised, to say the least, that HBP-Aerodyne, in its moving papers, did not even mention the previously filed Illinois Interpleader Action.  Accordingly, the court **denies** Opposed Motion of Intervenor HBP-Aerodyne, LLC for Leave to File its First Supplemental Counterclaims.[6]

### C.      Prologis's Motion to Dismiss WRR's Claims and for Summary Judgment

On February 14, 2006, Prologis filed its Motion to Dismiss WRR's Claims and for Summary Judgment.  In its Second Amended Complaint, WRR asserted three claims against Prologis: in Count 1, it sought a declaration that WRR had superior rights in the Sequestered Property; in Count II, it claimed that "to the extent Defendants have exercised dominion and control over the Licensed Property to the exclusion of Plaintiff's rights, Defendants have wrongly converted such property"; and in Count V, it sought an injunction prohibiting Prologis from transferring rights to property over which WRR asserted that it had a superior right.

---

[6]Alternatively, even under the Rule 15 factors (*see supra*), leave to amend would be denied.  HBP-Aerodyne offers no explanation as to why it waited until May 2006 to seek leave to amend, when it knew all the relevant facts pertaining to its new claims in February 2006.  Further, WRR has offered evidence that allowing the supplement to the counterclaims would prejudice WRR with regard to expert disclosures or require a modification of expert disclosure and discovery deadlines.

**Memorandum Opinion and Order – Page 13**

In support of its motion, Prologis contends that WRR's claims for declaratory (Count I) and injunctive (Count V) relief should be dismissed as moot, since it does not claim any interest in the property at issue and the property is now sequestered per the sequestration order of the magistrate judge.  Prologis argues that WRR's conversion claim (Count II) should be dismissed for failure to state a claim, since Texas law does not recognize conversion of intangible intellectual property.  Alternatively, Prologis contends it is entitled to summary judgment because WRR has raised no genuine issue of material fact that suffered any damages as a result of the alleged conversion, an essential element to sustain a cause of action for conversion.  WRR, in response, does not dispute that its injunctive relief claim against Prologis has been mooted by subsequent events, and stipulates that the court may dismiss this claim pursuant to Fed. R. Civ. P. 41(a)(2).  As to Prologis's motion to dismiss WRR's request for a declaration that WRR had superior rights in the property, WRR contends that even though Prologis has since disclaimed any interest in the property at issue, a disclaimer subsequent to the initiation of this suit does not moot its request for declaratory judgment.  With regard to Prologis's motion to dismiss its conversion claim, WRR contends that Prologis's motion should be denied, since Texas law supports a claim for conversion of intellectual property that has been reduced to tangible form, as in this case.  Further, WRR contends that Prologis is not entitled to summary judgment on its conversion claim because it has raised a fact issue as to damages, namely, it is being damaged by its "inability to access and utilize that property," in that access to the tooling is necessary for it and its licensee HiPerformance "in continuing to license, manufacture and sell turbochargers."  *See* WRR Resp. to Prologis Mot. at 22.  .

The court will first address Prologis's motion to dismiss WRR's request for a declaration as to its superior rights in the property (Count I), and then turn to Prologis's motion to dismiss WRR's conversion claim (Count II), or, alternatively, for summary judgment as to the conversion claim.

### 1.      Declaratory Judgment Relief (Count I)

Prologis contends that WRR's claims for declaratory relief (Count I) should be dismissed as moot, since it is merely a landlord and does not claim any interest in the property at issue, and the property is now sequestered per the sequestration order of the magistrate judge.  WRR, in response, argues that this court should enter a declaratory judgment in its favor and against Prologis with regard to Prologis's lack of interest in the property at issue, even though Prologis has disclaimed any interest in the property.  The court disagrees.

The Declaratory Judgment Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  As the Fifth Circuit has stated:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.  Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties.   The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.  Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either

> continuing harm or a real and immediate threat of repeated injury in
> the future. Similar reasoning has been applied to suits for declaratory
> judgments.

*Bauer v. State of Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (internal citations and punctuation

omitted).

In light of Prologis's disclaimer of any interest in the subject property, and since the property

was removed from the leased premises in accordance with the magistrate judge's December 9, 2004

order and is currently sequestered by order of the magistrate judge, the court determines that there

is no ongoing injury to WRR and any live dispute, assuming one ever existed as to the landlord

Prologis, ceased in December 2004.  As there is no live case or controversy for this court to resolve,

declaratory judgment would therefore be inappropriate.  *See Bauer*, 341 F.3d at 358 (and cases cited

therein).  Accordingly, the court grants Prologis's motion to dismiss WRR's request for declaratory

judgment that is has superior rights in the property at issue (Count I).

### 2.       Conversion (Count II)

Prologis contends it is entitled to summary judgment on WRR's conversion claim because

WRR has failed to raise a genuine issue of material fact that it suffered any damages as a result of

the alleged conversion, an essential element to sustain a cause of action for conversion.

### a.       Legal Standard for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v.*

*Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact

**Memorandum Opinion and Order – Page 16**

is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact

issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### b.   Discussion

Under Texas law, "the tort of conversion is defined as the unauthorized and wrongful assumption and exercise of dominion and control over the property of another, to the exclusion of and inconsistent with the owner's rights." *50-OFF Stores, Inc. v. Banques Paribas (Suisse, S.A.)*, 180 F.3d 247, 253 (5th Cir. 1999), *cert. denied*, 528 U.S. 1078 (2000) (and cases cited therein). Damages are an "essential element of a conversion claim" under Texas law. *Id.* at 254; *see also Fields v. Keith*, 174 F.Supp.2d 464, 482 (N.D. Tex. 2001) (Lindsay, J.), *aff'd*, 273 F.3d 1099 (5th Cir. 2001) (dismissing conversion claim where plaintiff was made whole when the funds she claimed had been converted were restored to her); *United Mobile Networks, LP v. Deaton*, 939 S.W.2d 146, 147 (1997); *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex.1982). Damages are limited to the amount necessary to compensate the plaintiff for the actual losses or injuries sustained as a natural and proximate result of the defendant's conversion. *United Mobile Networks*, 939 S.W.2d at 147 (and cases cited therein).

Prologis contends that it is entitled to summary judgment on WRR's conversion claim, as WRR has failed to create a genuine issue of material fact as to damages. Specifically, the undisputed evidence shows that the property at the leased premises which WRR alleges Prologis converted was never transferred to HBP-Aerodyne, but has been sequestered since the initiation of this lawsuit. In response, WRR contends that Prologis is not entitled to summary judgment on its

conversion claim because it has raised a fact issue as to damages, namely, it is being damaged by its "inability to access and utilize that property," in that access to the tooling is necessary for it and its licensee HiPerformance "in continuing to license, manufacture and sell turbochargers."  *See* WRR Resp. to Prologis Mot. at 22.

On December 26, 2004, Craig Henderson, counsel for WRR at the time, obtained a TRO which ultimately resulted in the sequestration at the leased premises of, *inter alia*, certain turbocharger engineering drawings and the information they contained.  On December 1, 2004, Judge Buchmeyer ordered that the TRO was to remain in effect and referred Plaintiff's request for injunctive relief to Magistrate Judge Stickney for a hearing on December 3.  On December 3, 2004, all parties appeared before Magistrate Judge Stickney, who ordered WRR and HBP-Aerodyne to remove any property from the leased premises over which they disputed ownership.  Prologis provided the parties access to the leased premises.  Following the hearing, the magistrate judge extended the TRO until December 8.  Following another hearing on December 7, the magistrate judge issued a Supplemental Order, dated December 9, which ordered that the Sequestered Property be placed in an independent secured storage facility until further order of the court.  On January 3, 2005, the magistrate judge issued a Protective Order for Sequestered Property, delineating the parameters of the sequestration and the rights of access to the Sequestered Property.  The Supplemental Order and Protective Order for Sequestered Property are still in place.

In light of the undisputed facts and judicial orders entered in this case, it is clear that any damages of which WRR complains stem from the TRO and sequestration orders, and not any alleged conversion by Prologis.  Otherwise stated, any purported losses or injuries of which WRR complains were not sustained as a natural and proximate result of anything Prologis did, but rather are a result

of judicial orders.  WRR's argument to the contrary strains credulity.  Accordingly, the court determines that Prologis's motion for summary judgment on WRR's conversion claim should be granted, as WRR has failed to create a genuine issue of material fact as to damages.[7]

## III.    Conclusion

For the reasons set forth herein, the court **denies** Plaintiff's Opposed Motion for Leave to File its Third Amended Complaint; **denies** Opposed Motion of Intervenor HBP-Aerodyne, LLC for Leave to File its First Supplemental Counterclaims; and **grants** Prologis's Motion to Dismiss WRR's Claims and for Summary Judgment.  Plaintiff's claims for declaratory relief (Count I) and conversion (Count II) are hereby **dismissed with prejudice** as to Defendant Prologis.  Further, pursuant to Fed. R. Civ. P. 41(a)(2), Plaintiff's request for injunctive relied (Count V) is **dismissed with prejudice** as to Defendant Prologis.

**It is so ordered** this 30th day of June, 2006.

Sam A. Lindsay
United States District Judge

---

[7]As the court has determined that summary judgment should be granted in Prologis's favor because WRR has failed to raise a genuine issue of material fact issue as to damages, the court need not consider Prologis's alternative argument that it is entitled to summary judgment because WRR never made a demand for return of property.  Moreover, the court need not address Prologis's motion to dismiss WRR's conversion claim for failure to state a claim.